## J. T. WINTRODE v. LIDA A. FLUKE.

HUSBAND AND WIFE — *Replevin* — *Evidence.* Where the husband as L. A. F. purchased a stock of goods and fixtures, rented a store-room, and paid the rent of the room for a time by a check on a bank signed L. A. F., was sued, and in the same room with his wife served with a summons as L. A. F., appeared in justice court and made an affidavit for continuance as L. A. F., and under such name was sworn as defendant in said action, and after a judgment was obtained for rent of said room on personal service on him as L. A. F., and the goods and fixtures taken on execution, he claimed them as exempt as his stock in trade; subsequently his wife claimed the goods as her own, and that her name was L. A. F. and his was M. S. F., and further claimed that judgment against her was void on a summons served upon her husband, and brought an action to recover the goods: *Held*, That statements made by him about their general business while it was being carried on were competent evidence, even when made in the absence of the wife; and *held*, under the peculiar facts of this case, that wide latitude should have been given in the introduction of evidence.

*Error from Shawnee Superior Court.*

REPLEVIN.   The opinion states the case.

*Case & Moss*, for plaintiff in error.

*Frank Herald*, for defendant in error.

Opinion by HOLT, C. : This is an action in replevin for goods taken on execution against L. A. Fluke, issued out of justice court.   It was tried by a jury at the January term, 1886, of the superior court of Shawnee county, and judgment rendered for plaintiff.

The testimony discloses the following facts: In November, 1884, one Olson rented a store-room at No. 210 Kansas avenue, Topeka, a part of which he sub-let to Charles Nyman for a cigar and tobacco store.   In that month Nyman sold his goods and store fixtures, and assigned his lease to L. A. Fluke, who thus became a tenant of Olson.   At the time Nyman sold the store he made a contract with the husband.   The property was sold for $200, $125 of which was paid by a check, and

the balance in three notes of $25 each.   The husband offered
his notes to Nyman, who wished Fluke's wife to sign them,
and she did so.   These notes were not produced at the trial.
There was some question about the name the wife signed;
whatever it was, she prefixed Mrs. thereto.   The $125 paid
by a check on the Topeka State Bank was signed by the hus-
band, "L. A. Fluke."   On the 6th of November, 1884, the
Flukes went together to the Topeka State Bank and there de-
posited $200; the husband signed the signature-book "L. A.
Fluke;" and the entire amount deposited was checked out by
him under that name.   The business was continued at No.
210 Kansas avenue under the name of L. A. Fluke, and the
husband managed and apparently owned it.   He paid dif-
ferent bills—among others for the rent—by checks on the
Topeka State Bank signed "L. A. Fluke."   Subsequently,
owing to non-payment of rent, Olson brought an action of
forcible detainer against L. A. Fluke.   The summons was
served by a constable, who went to their place of business and
asked for L. A. Fluke; the husband and wife were both in
the back part of the store at the time, and the husband stepped
forward in answer to his inquiry for L. A. Fluke, and the
summons was there served upon him.   At the return-day the
husband appeared and made an affidavit for continuance as
L. A. Fluke.   Upon the trial of that case the plaintiff was non-
suited on account of a defect in the notice to quit.   Another
suit was immediately instituted and another summons served
upon the husband, who again appeared and obtained another
continuance upon his affidavit signed "L. A. Fluke," and was
sworn on the trial as defendant L. A. Fluke.   Judgment was
rendered in favor of Olson.   The goods and fixtures were then
taken out of their place of business by the Flukes without any
further process.

Afterward another action was brought by Olson, to recover
the rent still due for the premises.   The summons was served
upon the husband personally; judgment was rendered in jus-
tice court by default; execution was issued, and the stock and
fixtures, which had been removed to another place, were levied

upon. The husband claimed them as exempt, being his stock in trade; this claim, however, was soon abandoned. Subsequently his wife, who had been absent in Illinois at the time judgment for rent was rendered, returned and brought this action in replevin, stating that she was L. A. Fluke, and had never had service of summons made upon her in the action for rent; that her husband's name was M. S. Fluke; that he had been acting as her agent, and claimed that any judgment rendered against her upon a summons served upon him was void.

The defendant brings the case here. He argues that the judgment for rent against L. A. Fluke cannot be questioned in this action. If the only service made in that action was by summons served upon M. S. Fluke, then he is mistaken. Judgment without service upon a defendant is absolutely void, and can be attacked collaterally. On the trial of this action one fact to be found was, who was L. A. Fluke — the husband, or wife? If it should be determined that L. A. Fluke was the wife, then whether she had conducted herself in such a manner as to estop her from denying that her husband was L. A. Fluke; and then the further fact whether the property taken on execution was the property of the wife or of the husband.

The testimony brought here presents a peculiar and unusual transaction, and so far as it shows the doings of the husband, at least, a dishonest one. It seems hardly probable that these matters should have proceeded in the way they did without the knowledge of Mrs. Fluke. The fact that she went with her husband to the bank and deposited money there; that he wrote "L. A. Fluke" in the signature-book of the bank with her consent and approval; that he made this trade for the store, offering his note in payment; that he accepted service of summons while in the same room with her, and went to the justice of the peace and obtained a continuance under the name of L. A. Fluke; that he made an affidavit as L. A. Fluke, and was sworn on trial as L. A. Fluke; the removal from their place of business after judgment without further process; and

his attempt to hold this property as exempt as his own after it was levied upon in the action for rent, can be explained upon the theory that the business, property and fixtures were his own, and his name was L. A. Fluke, or as an effort on his part to conceal this whole trouble and attendant unpleasantness from his wife.

It is contended that all this might have been done without the consent or knowledge of the wife, and the case was tried upon that theory, and the verdict could only have been rendered upon such a belief. We repeat, however, that it is at first sight improbable that his wife did not have some knowledge of some of these transactions, especially when we consider their manner of doing business. She testified that she looked after the business herself, and knew what was going on; that she knew there was trouble about the rent; and it is fairly to be inferred that she knew how the place was rented, when rent was due, etc. It is evident that the husband wished both his wife and himself to escape the payment of this debt to Olson, not because it was not honestly due, but to defraud him. To do so he pursued methods outside the ordinary powers of an agent, and beyond any authority expressly proven by direct evidence. They both claim that he was acting as her agent, and as such had control of her property. But there is enough evidence of extraordinary and uncommon circumstances to raise a presumption that instead of the relation of principal and agent existing between them, they were both in collusion to defraud Olson of his rent. Under such circumstances, we believe there should have been wide latitude given in the introduction of testimony. The court excluded the statements made by the husband when not made in the presence of his wife. We think this was error. If they were made while he was his wife's agent, about her business, and within his authority, they were certainly competent as admissions against her interests; if made while he had control and claimed ownership of the property, they might possibly have been competent for that reason; if they were made to advance the plans of both to defraud Olson, as there seems to be a fair

inference they were, certainly they would have been competent against her, even though not made in her presence. The rule is too well known to require the citation of authorities, that when two or more agree to carry out some dishonest purpose, the declarations of either made in the furtherance of the common design are evidence against all. We believe there was sufficient proof to authorize the court to receive in evidence the declarations of the husband concerning the property, its ownership, and his relation to it, even though the wife was absent.

For this error in excluding evidence of his statements we recommend that the case be reversed, and remanded for new trial.

By the Court: It is so ordered.

All the Justices concurring.