AULTMAN & TAYLOR MACHINERY COMPANY v. J. T. CAPPLEMAN.

Decided July 1, 1904.

**1.—Damages—Special Verdict.**

The amendatory act of 1897 (Sayles' Civ. Stats., art. 1331) in relation to special verdicts, while authorizing the courts to treat as harmless mere omissions in the verdict where the evidence supplies them, unless the party complaining requests the submission of the issues, does not authorize them to assess unliquidated damages in a case tried by a jury.

**2.—Same—Sale of Machine with Warranty—Measure of Damages—Profits.**

Where a machine sold is not such in kind, quality or condition as it was warranted by the seller to be, the direct and natural loss which the buyer is entitled to recover is the difference between the value of a machine he was thus entitled to receive and the value of the one he did receive, and not the profits he may have lost because the machine was not such as it was warranted to be.

**3.—Same—Verdict Uncertain.**

Where the jury, rendering a special verdict, allowed the plaintiff buyer for the difference in value between a threshing machine as contracted for and warranted and its value as delivered, and also a further sum as damages for its diminished capacity to thresh grain, a judgment for the total amount of the verdict should be set aside as based upon a wrong measure of damages, or at least on a verdict which is uncertain.

**4.—Principal and Agent—Powers of Agent—Evidence.**

Where there was evidence to the effect that the agent of defendant, through whom plaintiff purchased the property in question, was a traveling salesman with limited powers, it was error for the court to permit plaintiff to prove by the declarations of such agent that he was State agent for the defendant, the rule being that the power of an agent can no more be extended than it can be created by his own declarations.

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

*W. T. Allen* and *Burgess & Burgess,* for appellant.

*Denny & Taylor,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The following case was made by the pleadings: Appellee purchased of appellant a steam thresher to be delivered to him at Jolly, Texas, by June 10, 1903, but which was not delivered till June 24, 1903. Besides guaranteeing the delivery by June 10, 1903, appellant warranted the capacity of the thresher to be 2000 bushels of wheat per day, and warranted that the machinery would be constructed of first-class material and in a first-class manner, and agreed to properly set up and train the thresher and to furnish feed boards and repairs free during the first year. For breaches of these covenants damages were claimed as follows: $500 to cover what could have been made during the fifteen days of delay; $700 to cover what could have been made if the thresher had had the capacity warranted; $725 to cover the difference in value of the thresher delivered and the one contracted for; and $65 to cover the lack of feed boards and repairs.

The answer was a general denial. The judgment in favor of appellee for $1000, from which this appeal is prosecuted, rests on a special ver-

dict, finding the covenants to have made and broken substantially as alleged, and assessing the damages as follows: "32. Q: Is the plaintiff entitled to any damages by reason of the delay in the delivery of said machine on the 10th day of June, 1903, at Jolly, Texas, to plaintiff? Answer: Yes. 33. Q: What amount, if any, was plaintiff damaged by the delay of said machinery? Answer: $400. 34. Q: Is the plaintiff entitled to any damage by reason of the diminished capacity of said machine; if so, how much? Answer: Yes; $400. 35. Q: Is there any difference between the market value of the separator that was delivered to plaintiff and such separator as defendant agreed to deliver; if so, how much? Answer: Yes; $200. This amount is not considered a damage."

In response to other special issues—there being forty-two in all—the jury made, among others, the following findings: On March 13, 1903, appellant's agent, J. J. Cunningham, representing himself as the State agent, took from appellee a written order for the thresher in question, to be delivered about the 1st of May of that year, but it was not delivered under this order; on May 22, 1903, a verbal contract was made with said agent, which was "a separate and distinct sale," for the delivery of said machine, "properly constructed and put together," on June 10th, but it was not delivered until June 24th; Cunningham as agent for the appellant agreed to put "in good running order and properly test and train said machinery upon its arrival," which was not done; Cunningham represented that said machinery had the capacity of threshing from 1500 to 2000 bushels of wheat per day, when it only had the capacity of threshing 1100 bushels; Cunningham was acting within the apparent scope of his authority when he made these representations, which were relied on by appellee; appellee had engaged grain to thresh for the season of 1903 and informed appellant's said agent of this fact prior to the purchase of the thresher, which was operated forty-eight days during that season; appellee had a competent crew of men in charge of the machinery a part of the time and a part of the time he did not; he probably could not have obtained a competent machinist at that season of the year to train the machinery and put it in good running order; the thresher was operated at an expense of $50 per day, appellee charging toll at the rate of 10 cents per bushel for wheat and 6 cents per bushel for oats in the shock, and 6 cents for wheat and 3 cents for oats in the stack; the wheat averaging that year from fifteen to eighteen bushels and oats thirty bushels per acre.

Error is assigned to the judgment on the following grounds, among others: First, because the special findings are "inconsistent, indefinite and uncertain, and do not support the judgment;" second, because the answers to questions 32, 33 and 34, quoted above, are mere legal conclusions of the jury and not findings of fact on which the court could render judgment; third, because the answer to the thirty-fourth question is uncertain and does not show what character of damages was intended to be included; fourth, "because the plaintiff having sued for and recov-

ered the difference between the value of the machinery agreed to be delivered and the value of the machinery that was delivered, is not entitled to recover any further damages for the diminished capacity of said machinery;" fifth, because the verdict shows that the diminished capacity of the machinery in controversy was due in part, at least, to the incompetency of the crew which appellee had in charge of same.

As to the contention urged under these assignments, and the cases cited to sustain it, that every fact necessary to support the judgment must appear in the special verdict, it is sufficient to say that this rule was changed by the amendment of 1897, and that the cases cited arose prior thereto. Sayles' Civ. Stats., art. 1331. This change in the law treats as harmless mere omissions in the verdict where the evidence supplies them, unless the party complaining requests the submission of issues so omitted, which was not done in this instance. However, the effect of this change must not be carried too far, and in construing the amended statute we must not lose sight of the mischief intended to be corrected by the amendment, as reflected in the decisions cited by appellant. For instance, it could hardly have been the purpose of the Legislature in amending this statute, so as to avoid reversals for mere omissions in the verdict of facts clearly proved, to authorize the court to assess unliquidated damages in a case tried by a jury. A verdict which does not in some way fix the amount of recovery in such case should perhaps not be treated as a verdict at all. But however this may be, we have reached the conclusion that the verdict in question is defective. It seems from the last sentence of their answer to the thirty-fifth question that the jury did not intend to include the item of $200 as a part of the damages assessed by them in addition to the other items, if at all, and yet it seems to be the established general rule in the law of damages to measure the loss in such cases by the difference in value between the machinery furnished and the machinery contracted for. The rule is thus stated and illustrated in Mechem on Sales, sec. 817: "Where the article furnished by the seller is not such in kind, quality or condition as it was expressly or impliedly warranted to be, the direct and natural loss to the buyer who keeps it is obviously the difference between the value of an article of the kind he was thus entitled to receive and the value of the article which he has in fact received. For this loss he is entitled to compensation. There may, of course, be other losses resulting from the seller's default, and these will be considered later; but the direct and immediate loss will be at least this difference in value. For the breach of warranty, then, as to kind, quality or condition, the measure of the buyer's injury will be the difference between the value of the article of the kind warranted and the value of the article actually delivered; and for this difference the buyer may recover damages." Sec. 1830: "Thus, where the seller of a brick machine warranted it to have the capacity to make a certain number of bricks per day, but the machine failed in this respect, it was held that the proper measure of damages was the difference in value between a machine with the capacity war-

ranted and a machine like the one delivered, and not the profits which the buyer might have made on the larger quantity of bricks he might have made and sold if the machine had had the capacity to make as many bricks as it was warranted to make. In such a case the longer the buyer should continue to operate the defective machinery, even with knowledge of its defects, and the greater the deficiency in the number of bricks which he could thereby produce, the larger would be his damages."

Instead of this difference in value, the jury seem to have substituted the item of $400 assessed as the damages caused by "the diminished capacity of the machine." It is, however, by no means clear from the entire verdict exactly what the jury intended to include in this item. The findings rather indicate that it was intended to cover the difference in profits arising from the operation of a thresher having the capacity of from 1500 to 2000 bushels and one having the capacity of only 1100 bushels. The pleadings, however, made the further issue, and the evidence tended to prove, that for the first seventeen days of its operation the capacity of the thresher was considerably less than 1100 bushels, owing to the failure of appellant to sooner put it in good running order. The loss thus caused was not really due to any inherent lack of threshing capacity, and was not therefore properly chargeable to any breach of warranty of capacity, but rather to the failure of appellant to keep its covenant to put it in good running order, "properly trained and tested." This loss was recoverable in addition to damages resulting from breach of warranty of capacity, and not a part of such damages. We are unable to determine from the whole verdict, especially when read in the light of the pleadings and evidence, whether the item of $400 should be referred to the breach of warranty of the capacity of the thresher, or to the breach of covenant to put it in good running order, or to both, the jury having found both covenants to have been broken. If it is to be referred in whole or in part to the breach of warranty of capacity, as it probably should be, the further and perhaps more serious difficulty is encountered, whether the jury adopted the true measure of damages. Undoubtedly the general rule is as quoted above, that the difference in the market value measures the damages when machinery has less capacity than the seller warrants it to have, for this inferior capacity is taken into consideration in fixing the value, but to this may be added as special damages in cases like this loss of profits within the contemplation of both parties at the time of the sale; such, for instance, as would arise from the inability of the purchaser to obtain another thresher and of the requisite capacity in time to thresh, as contemplated, the crop of the season immediately following the purchase. In this respect there is room for difference between the purchase of a brick machine for continuous use, taken as an illustration by Mr. Mechem, and the purchase of a threshing machine to be used during a given threshing season, which is usually of short duration. Dilley v. Ratcliff, 69 S. W. Rep., 237. We find nothing, however, to indicate that the

jury intended to restrict the item of $400 to which they found appellee was entitled "by reason of diminished capacity of said machine," to loss of profits due to inability to obtain a thresher of the capacity of from 1500 to 2000 bushels in time to thresh the crop of 1903. But if the jury did not adopt the wrong measure of damages, the verdict, we think, is at least too uncertain in its meaning to be made the basis of a judgment for the damages recovered.

We are also of opinion that the court erred in permitting appellee to prove by the declarations of Cunningham that he was State agent for appellant, the proof otherwise showing that he was a traveling salesman with limited powers, and the rule being that the power of an agent can no more be extended than it can be created by his own declarations.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*