### NAYLOR et al. v. PARKER et al.

(Court of Civil Appeals of Texas. Ft. Worth. May 20, 1911.)

1. TENANCY IN COMMON (§ 43*)—AGENCY OF COTENANTS—ACTS IN EXCESS OF AUTHORITY—DUTY TO REPUDIATE—RATIFICATION.

Where a cotenant of certain land, without authority, attempted to bind his cotenant to an option contract to sell the land, assuming authority to sign his cotenant's name thereto, the latter was not required to repudiate the contract or to take any action in the premises to notify the purchaser of his cotenant's lack of authority on pain of being presumed to have ratified the same, but was entitled to ignore the transaction.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 136; Dec. Dig. § 43.*]

2. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In the absence of evidence so conclusive as to warrant a peremptory instruction that one tenant in common was authorized to sign his cotenant's name to an option contract to sell the property, or that the latter ratified such act after learning of it, instructions that certain recited acts or omissions on the part of the tenant, whose name was so signed, would, or would not, constitute authority for the signing of his name, etc., were erroneous as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–466; Dec. Dig. § 194.*]

3. TENANCY IN COMMON (§ 54*) — SALE OF COMMON PROPERTY—AUTHORITY OF COTENANT—ESTOPPEL.

Where there was no evidence that a tenant in common accepted any benefits under a contract by his cotenant to sell the entire property purporting to bind both, the cotenant, who was not a party to the contract except by the signing of his name thereto by his cotenant without authority, was not estopped to deny such want of authority.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 129; Dec. Dig. § 54.*]

4. SPECIFIC PERFORMANCE (§ 6*) — OPTION CONTRACT—MUTUALITY.

Where an option contract for the purchase of land provided that, if the prospective purchasers failed to carry out the contract, a deposit made should be forfeited to the sellers as liquidated damages, and the contract should then become null and void, but the purchasers notified the sellers of their election to complete the contract, they thereby waived the right to terminate their obligation by a forfeiture of the deposit, so that the right to specific performance became reciprocal, and the purchasers' right to such relief was not affected by reason of the fact that, prior to the purchasers' election to complete the contract, the sellers could not have enforced specific performance, but could only have forfeited the deposit.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11; Dec. Dig. § 6.*]

5. SPECIFIC PERFORMANCE (§ 32*)—REQUISITES—"MUTUALITY OF LEGAL RIGHT."

The term "mutuality of legal right," as used in the rule that specific performance will not be decreed unless there is mutuality of legal right as well as of remedy, means only that the contract must be binding on both parties, i. e., that it is not nudum pactum.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. § 32.*
For other definitions, see Words and Phrases, vol. 5, p. 4651.]

6. SPECIFIC PERFORMANCE (§ 6*)—MUTUALITY OF REMEDY—OPTION CONTRACT.

An option, based on a valuable consideration moving from the holder of the option, even though it imports no obligation of the holder to purchase, is an exception to the rule that, if a contract cannot be specifically enforced against the one seeking enforcement, he is not entitled to such remedy as against his adversary.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11; Dec. Dig. § 6.*]

7. SPECIFIC PERFORMANCE (§ 32*)—MUTUALITY OF OBLIGATION—TIME.

Want of mutuality of obligation precluding remedy by specific performance, under an option contract for the sale of land at the time the option was granted, was no bar to the purchaser's right to specific performance, if at the time of filing the bill such mutuality existed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. § 32.*]

**8. SPECIFIC PERFORMANCE (§ 17*)—PARTIES—RIGHTS OF ASSIGNEE.**

One who furnished part of the consideration for an option contract to purchase land was in effect an assignee of a part of the option, and entitled to the same right to enforce specific performance against the vendors as the holder of the option.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 38–46; Dec. Dig. § 17.*]

**9. SPECIFIC PERFORMANCE (§ 114*)—RELIEF OBTAINABLE—DAMAGES.**

Under the rule authorizing parties to plead inconsistent causes of action or defenses, plaintiff was entitled to sue for specific performance of a contract, and in another count for damages for breach, in the event the specific performance could not be decreed; such petition not being objectionable for misjoinder of causes of action.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 114.*]

**10. VENDOR AND PURCHASER (§ 70*) — CONTRACT OF SALE—INSTRUCTION.**

An option contract for the sale of a boundary of land, consisting of several tracts containing 492 acres each, provided that the price should be $5 per acre, the purchaser to assume the amount due the county on each tract, stipulating that $13,500 was to be paid in cash in addition to the amount deposited in escrow to secure performance, and the remainder of the consideration to be evidenced by three notes due in one, two, and three years. It further provided that separate deeds should be given for the separate tracts, and that each tract should carry its own indebtedness. *Held,* that the contract was not uncertain as to the amount to be paid, since the amount of the unpaid consideration for any particular tract was the difference between the contract price of $5 per acre, less the aggregate of indebtedness due the county on that tract, plus the cash paid the sellers prorated between the several tracts on an acreage basis.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 102–111; Dec. Dig. § 70.*]

**11. SPECIFIC PERFORMANCE (§ 29*)—CONTRACT—DESCRIPTION—PROPERTY.**

An option contract for the sale of school land, describing it as S. county school land, located in C. county, Tex., and consisting of four leagues of land containing 17,712 acres, divided into tracts of 492 acres each, a separate title being held by the sellers to each tract, etc., constituted a sufficient description of the land to entitle the holder of the option to maintain specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 69–82; Dec. Dig. § 29.*]

**12. VENDOR AND PURCHASER (§ 350*)—CONTRACT OF SALE—DAMAGES—EVIDENCE.**

Under a general allegation of $70,000 damages for breach of a contract for the sale of land, alleged evidence of the market value of the land was admissible to sustain a recovery of the difference between the contract price and the market value.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043–1046; Dec. Dig. § 350.*]

**13. SPECIFIC PERFORMANCE (§ 120*) — EVIDENCE—TITLE IN DEFENDANTS—ABSTRACT OF TITLE.**

In a suit for specific performance of a contract for the sale of land, an abstract showing title in defendants was admissible to show their ability to perform.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 384–386; Dec. Dig. § 120.*]

**14. SPECIFIC PERFORMANCE (§ 20*) — JOINT OWNERSHIP—PERFORMANCE OF PART.**

Where a co-owner of certain lands, assuming to bind himself and his cotenant to a contract for the sale of land, had no authority to bind such cotenant, the purchaser was entitled to enforce specific performance so far as the interest of the cotenant executing the contract was concerned, and to recover against him damages sustained for failure to secure specific performance of the outstanding interest.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 48; Dec. Dig. § 20.*]

**15. SPECIFIC PERFORMANCE (§ 123*) — CONTRACT—BREACH—DAMAGES—INSTRUCTIONS.**

A cotenant of certain real estate, assuming to have authority to bind his cotenant, contracted to sell the entire property to plaintiffs; but, such authority being repudiated by the cotenant so represented, plaintiffs sued both for specific performance, and for damages for breach of contract in alternative. The court charged the jury to allow damages, the amount of which would be the difference between the market value of the land and the contract price, in the event the jury found defendants had breached the contract, if the jury should further find that the contract should not be specifically performed, but that the same was valid. *Held* that, since the same evidence which would ·support a recovery of damages would also support a decree for specific performance at least so far as the interest of the tenant executing the contract was concerned, the court should have further charged that, in the absence of fraud by plaintiffs in procuring the contract, it was valid and binding on the cotenant executing the same at all events, and on his cotenant also, if the latter authorized its execution or ratified it afterwards.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 123.*]

**16. VENDOR AND PURCHASER (§ 351*) — CONTRACT — BREACH — SPECIAL DAMAGES—LOSS OF SALE.**

Where vendors, under an option contract for the sale of land, were informed both before and after the making thereof that the purchasers had a prospective customer for the land at an advanced price, and thereafter that a contract of resale had been made, the purchasers were entitled to recover the loss sustained by reason of their inability to convey, and to plead such resale as special damages in an action for defendants' refusal to complete the contract made by the acceptance of the option.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1047–1058; Dec. Dig. § 351.*]

**17. EVIDENCE (§ 121*) — DECLARATIONS OF AGENT—RES GESTÆ.**

Where a co-owner of certain land, assuming to have authority from his co-owner, attempted to bind both, by an option contract to sell the land to plaintiffs, declarations of such co-owner so signing the contract, both by correspondence and orally, that he had authority from his co-owner to sign the latter's name to the contract, some of which were made before executing the contract and during negotiations relative to the sale, and some after the contract was executed, were admissible as res gestæ as against the owner so signing, and also as

against his co-owner, in the event the jury determined the issue of agency in plaintiffs' favor. [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303–338, 1117; Dec. Dig. § 121.*]

Dunklin, J., dissenting in part.

Appeal from District Court, Hardeman County; S. P. Huff, Judge.

Action by G. A. F. Parker and another against S. A. Naylor and another. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Veale, Davidson & Veale, for appellants. Madden, Trulove & Kimbrough and Decker & Clarke, for appellees.

DUNKLIN, J. S. A. Naylor and Arthur Lile have appealed from a judgment for $8,856 rendered against them in favor of G. A. F. Parker and S. S. Evants as damages for the breach of the following contract in writing:

"This agreement this day made by and between S. A. Naylor, of Hardeman county, Texas, and Arthur Lile, of Sherman county, Texas, owners of the following described land, and G. A. F. Parker, of Deaf Smith county, Texas, witnesseth:

"For and in consideration of one dollar this day paid to said Naylor and Lile by said Parker, the receipt of which is hereby acknowledged, said Naylor and Lile do hereby grant unto said Parker an option to buy the land herein described, at the price and upon the terms herein set out, for a period of fifteen days from the date of this agreement.

"This agreement is conditioned that said Naylor and Lile are possessed of a good and sufficient title to said land, and that upon the terms of this agreement they shall convey to said Parker by their warranty deeds, good and sufficient titles to all of the land herein described. The attorneys for said Parker shall decide upon the sufficiency of the titles and conveyances.

"Should the titles prove defective, then this option money shall be returned to said Parker if he shall demand it, but if the titles and conveyance shall be declared good by said Parker's attorneys, then no option money shall be refunded, but shall be retained by said Naylor and Lile.

"Should said Parker buy said lands under this option contract, then the money so paid by him as an option shall be credited upon the amount hereafter named, to be placed in escrow by said Parker, pending the completion of title papers and conveyances.

"The land referred to in this contract is what is known as the Sherman county school land, located in Cochran county, Texas, and consists of four leagues of land containing 17,712 acres of land, divided into tracts of 492 acres each, a separate title is held by said Naylor and Lile to each tract of 492

acres, and each tract carries its share of the debt due to Sherman county and no more, that is to say, there is not a blanket indebtedness covering the whole tract of 17,712 acres, but each tract of 492 acres is security for its assigned part of said indebtedness and for no more.

"The entire debt due to Sherman county upon the entire 17,712 acres is declared to be $35,924.00, or an average of $2 per acre, plus $500.00. The land, however, is classified; the debt against some tracts of 492 acres being more than $2 per acre, and the indebtedness against other tracts being less than $2 per acre.

"The debt due to Sherman county will be due in seventeen years from some day in March, 1909, and bears 5 per cent. interest; the interest payable the 29th day of every July—option of ten years extension.

"In case said Parker shall buy said land under this agreement, the price agreed upon is $5 per acre for the entire tract of 17,712 acres, plus an additional amount of $500. The purchase price shall be paid by said Parker as follows: First, the amount due against the land shall be deducted, and the land deeded to said Parker subject to said indebtedness. Second. Said Parker shall within fifteen days deposit in the Western National Bank of Hereford $1,500, in escrow pending the fulfillment of this agreement.

"Upon the completion of this agreement, and the acceptance by the attorneys for said Parker of the title and conveyances, said Parker shall pay an additional amount of ($13,500.00) thirteen thousand five hundred dollars. The remainder due to Naylor and Lile shall be divided into three equal payments, running one, two and three years, respectively, all notes to be drawn 'on or before' said due dates, and to draw interest at the rate of eight per cent. per annum. Failure to pay any of the three notes when due shall at the option of said Naylor and Lile mature all of the three notes.

"The land shall be deeded to said Parker in tracts of 492 acres, separate deeds to be given to each tract, and abstracts of title to be furnished by said Naylor and Lile.

"Each tract shall carry its own indebtedness and be independent of all other land, so far as indebtedness is concerned.

"In case said Parker shall fail to carry out this contract, the escrow money shall be paid to said Naylor and Lile as liquidated damages, and the remainder of this contract shall then become null and void.

"Witness our hands this 17th day of February, A. D. 1909.

"[Signed]      Naylor and Lile.
               "S. A. Naylor.
               "G. A. F. Parker."

It was alleged in the plaintiffs' petition that in making the contract Parker acted for and on behalf of himself and coplaintiff,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Evants, who was equally interested with Parker. The proof says that the $1,500 named in the contract was deposited within the period of time stipulated. In one count of the petition plaintiffs sought to have the contract specifically enforced, and in other counts damages were sought for the breach of the contract. It was alleged that Naylor was duly authorized by Lile to execute the contract, but that, if such was not true, then plaintiffs prayed in the alternative for specific performance to the extent of decreeing title in plaintiffs to defendant Naylor's undivided one-half interest in the land and for damages against Naylor as compensation for the remainder upon his implied warranty and representation that he had authority from Lile to sell the latter's interest in the land. It was further alleged that, if Lile did not authorize Naylor to execute the contract, he afterwards ratified the same.

By verified answer Lile denied that he authorized Naylor to execute the contract for him, and upon the trial testimony was introduced to support that plea. Upon the issue thus presented the trial court charged the jury as follows:

"(9) You are instructed that the matter of Naylor being the agent for Lile in the sale of the land in controversy is a question of fact for the jury, to be determined from the testimony. And, to aid your investigation, you are instructed that an agency may be created by recognizing the acts of an agent with reference to the matter in hand, and acquiescence on the part of the principal as well as by special appointment or agreement with reference thereto, if any. And you may look to all the facts and circumstances surrounding the parties with reference to the holding of the land, their management of the same, and their dealings therewith. The act of the agent, in order to bind the principal, must have been done in pursuance to his duty and powers as such agent, or it must be approved and ratified by the principal after it has been committed. You are further instructed in this case that, if Naylor had the authority to contract for the sale of the land for Lile, such authority need not be in writing, but the same may be verbal or may arise from their holdings and dealings with reference to the land, as above given you in charge."

"(11) If Naylor could only contract to sell the land, and had no authority to sell the land, without having the purchaser to assume the indebtedness due Sherman county, then, if you so find, you are instructed that, under the facts in this case, Naylor exceeded his authority in making said contract with Parker, in that Parker is not bound by such contract to assume such indebtedness, but agrees to purchase the land subject to such indebtedness, and, unless you find that Lile, with knowledge of such provision in the contract, or of the facts which if pursued

with reasonable diligence would have led to such knowledge, consented to such contract, or ratified the acts of Naylor therein, then, if you so find, you should find for the defendants in this case.

"(12) You are further instructed that if it was privately understood between Naylor and Lile that said debt was to be assumed by whoever should purchase said land, and that Parker at the time he made the contract had no knowledge that Naylor had not the authority to contract to sell without such assumption being made, and relying upon Naylor's apparent authority, and you find that such contract was within the apparent scope of Naylor's authority, if any he had, and that, so relying, he (Parker) entered into the contract with Naylor, and in good faith carried out his undertaking, or offered to do so, and that Lile or Naylor did not within a reasonable time inform him that such contract was entered into without authority, but permitted him to proceed thereunder after having learned of the terms of the contract, or could have known of the same by the use of reasonable diligence on the part of Lile, then you should find for the plaintiffs.

"(13) If you find that Naylor did not have authority to make the contract for Lile, yet if he did so and notified Lile that he had made such contract; and you further find that Lile did not within a reasonable time notify Parker that Naylor had no such authority from him, and that he (Lile) stood by and permitted Parker to go forward under such contract, and to place himself in a worse condition than he was before; and you find that Lile knew of such contract and its terms, or could have learned of same by the exercise of reasonable diligence, and that without notifying Parker that he would not and could not be bound by said contract, —then you are instructed that Lile would be estopped from denying Naylor's authority to make such contract and cannot for that reason defeat specific performance of the contract.

"(14) If you find that Lile permitted Parker to go forward with the contract, and that he accepted part of the performance of the contract, after learning that the same had been entered into, and after learning of its terms, and permitted Parker to exercise his option to take the land and put up the money, and did not before that time notify him that the contract was made without authority, and therefore sought to make a new and different contract, and did not disaffirm the acts of Naylor in making said contract before that time, then you are instructed that Lile would not be permitted in law to accept part performance under the contract, and repudiate the remainder thereof.

"(15) You are further instructed in this case that agency cannot be proved by the acts and declarations of the agent. And, if you

find from all the facts and circumstances in this case that Naylor was not the agent of Lile to contract for the sale of his interest in the land, then you should disregard the acts and declarations of Naylor made with reference to such right, if any, he made to Parker. But, if you find there was such agency, then his acts and declarations so made, if any, should be given such consideration as you may find they are entitled to in this case."

[1] It will be noted that in the instructions quoted the jury, in effect, are told that Lile was under the legal duty to exercise reasonable diligence to notify Parker of any lack of authority in Naylor to bind him (Lile) by the contract in question, and that he would be estopped from denying Naylor's authority to make the contract, if he did not within a reasonable time after learning thereof notify Parker of such lack of authority on the part of Naylor. In that respect the instructions were erroneous. The evidence shows that prior to the execution of the contract the negotiations by Parker looking to the purchase of the land described in the contract were solely with Naylor, and that he had no communication whatever with Lile, until several days after the contract was executed. If Naylor had no authority to bind Lile by the contract, then the latter was not called upon to take any action in the premises for the purpose of notifying Parker of such lack of authority. He had the right to ignore the transaction after being informed that the contract had been made. Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323. This error will require a reversal of the judgment.

[2] We are of the opinion, further, that the instructions upon the issues of agency and ratification were subject to the criticism as being upon the weight of the testimony, and the same criticism would apply to several instructions requested by the defendants upon the issue of alleged agency of Naylor to bind Lile by the contract which were refused. In the absence of evidence so conclusive as to warrant a peremptory instruction that Naylor was authorized by Lile to sign the latter's name to the contract, or that Lile ratified that act after learning of it, any charge would be upon the weight of the evidence, and therefore improper, which embodies instructions that certain acts or omissions on the part of Lile would or would not in the first instance amount to an agreement on the part of Lile for Naylor to sign Lile's name to the contract, or that certain other acts or omissions on the part of Lile after learning of the contract would or would not amount to assent by Lile to Naylor's act in executing the contract in Lile's name.

[3] In the fourteenth paragraph of the instruction quoted, the issue of estoppel as against Lile is presented upon the theory that he accepted the benefits of a performance in part by Parker. We have been unable to discover any testimony in the record tending to show that Lile accepted any benefits under the contract, and we think this instruction was erroneous for that reason, and, furthermore, we doubt if plaintiffs' petition presented this theory of estoppel against Lile. This particular criticism of this instruction is not presented in appellants' brief, but we make this suggestion in view of another trial.

[4] Appellant earnestly insists that the contract was not such that a specific enforcement of it could be decreed at plaintiffs' instance. The contention is that the stipulation in the last clause in the contract providing that, in the event Parker failed to carry out the contract, the $1,500 deposited in escrow should be paid to Naylor and Lile as liquidated damages and the contract shall then become null and void, was in effect an agreement on the part of Naylor and Lile to accept the forfeit money in full satisfaction of Parker's failure to purchase, and that as Parker could thus elect to terminate his obligation to purchase by a surrender to the defendants of the forfeit money as liquidated damages, and in that event Naylor and Lile could not enforce specific performance against him, the contract was, therefore, lacking in that mutuality necessary to support an action for specific performance at Parker's instance. The principal authority upon which appellants rely to sustain this contention is the decision of our Supreme Court in Moss & Raley v. Wren, 102 Tex. 567, 120 S. W. 847. If appellants' construction of the last clause in the contract is correct, then the contract is essentially the same as the one construed by our Supreme Court in the decision referred to above. But, if we so interpret the contract, we do not think that it follows that Parker should be denied the right to a specific performance of the contract if he should elect to comply with the terms of the contract of purchase rather than to surrender forfeit money and thereby terminate his obligation under the contract. In that decision it will be noted that the proposed purchaser availed himself of the option to terminate the contract and forfeit the money which had been deposited and which had been agreed to be liquidated damages for the breach of the contract. Having elected not to purchase the property, as he had a right to do under the contract, it could not be said that the equitable title passed to him; but if he had instituted a suit against the vendor for specific performance, and thereby waived his right to terminate the contract, then the vendor would have been entitled to specific performance against him, and a mutuality of remedy would have existed.

[5] In Pomeroy on Specific Performance, the general rule is announced that, as a condition to granting equitable relief by enforcing specific performance, there must be a

mutuality of legal right and and mutuality in the equitable remedy. By "mutuality of legal right" is meant that the contract must be binding upon both parties; in other words, that the contract must not be a nudum pactum. See Pomeroy on Specific Performance, §§ 162–163, 166.

[6] The same author states the general rule to be that, if a contract cannot be specifically enforced against the one seeking enforcement, then he is not entitled to the remedy of specific performance against his adversary. But to this rule there are many limitations and exceptions. See Pomeroy on Specific Performance, § 163 et seq. An option contract based upon a valuable consideration moving from the holder of the option comes within the exceptions to the general rule announced, even though it imports no obligation on the part of the holder of the option to purchase.

"The frequent statement of the rule of mutuality—'that the contract to be specifically enforced must, as a general rule, be mutual, that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other'—is open to so many exceptions that it is of little value as a rule. But, in view of the firm place that the doctrine of mutuality has obtained in the courts of equity, it seems well to attempt a restatement that shall be more free from exceptions. The following form seems to meet the cases generally: If, at the time of the filing of the bill in equity, the contract being yet executory on both sides, the defendant, himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so lacking in mutuality that equity will not compel the defendant to perform, but will leave the plaintiff to his remedy at law. This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.

[7] "So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made. Equity is entirely willing to grant plaintiff the performance he applies for; but if it finds that in doing so the defendant, without fault, is left in turn to a remedy at law only, it refuses to lend its aid to such an unequal result. Therefore any original lack of mutuality in the terms of the contract will have no influence if the court finds that giving the plaintiff his relief will no longer leave the defendant to the law for relief." 2 Pomeroy, Equitable Remedies, § 769. See, also, 2 Pomeroy, Equitable Remedies, §§ 770, 771, 772, 773; Pomeroy, Specific Performance, § 169; 26 Am. Eng. Encyc. of Law, 30, 31, 32.

Accepting appellants' interpretation there-

of, the contract was in the nature of an option. Parker, for a consideration of $1,500, which was deposited in escrow, and as a forfeit in event he should fail to purchase, had the option to purchase the property upon the terms stated. When he deposited the $1,500, the consideration for the option was executed, and the institution of the suit was an election on his part to be bound by the terms of the purchase and to waive any right he had to terminate the contract by a surrender of the forfeit money. Indeed, this election was made prior to the institution of the suit, when he notified Naylor that he was ready to comply with the terms of the purchase and demanded of him abstracts of title thereto. When he thus elected to purchase the property, the mutuality of remedy between the parties existed, as Naylor and Lile could then enforce specific performance against him. The general rule is that an assignee of a contract may sue for specific performance. 36 Cyc. 758; Fry on Specific Performance, 93.

[8] Evants having furnished a part of the consideration, and being interested with Parker in the contract from its inception, stood in a position equally as favorable as if he had been Parker's assignee.

[9] The plaintiffs had the right to sue for specific performance of the contract and in another count to sue for damages for the breach of the contract in the event specific performance could not be decreed, as the right to plead inconsistent causes of action or defenses is given by our statute, and therefore there was no error in overruling defendants' exception to the petition presenting the objection that there was a misjoinder of causes of action.

[10] By the terms of the contract the price to be paid for the land was $5 per acre. The purchaser was to assume the amount due Sherman county upon each tract of 492 acres. The petition alleges the amounts due upon the respective tracts and shows an amount less than $4 per acre due upon each and every tract. The contract stipulated that $13,500 was to be paid cash in addition to the amount deposited in escrow, and the remainder of the consideration was to be evidenced by three promissory notes due one, two, and three years from date. It further provided that separate deeds should be given for the several tracts, and that each tract should carry its own indebtedness. The amount of indebtedness against any particular tract would be the difference between the contract price at $5 per acre and the aggregate of indebtedness due Sherman county on that tract and the amount of cash paid thereon by Naylor and Lile; the item last named being determined by prorating the cash paid between the several tracts on an acreage basis. Under the terms of this contract, the amount of indebtedness against the better

lands would be less than that against the lands of inferior quality, assuming that the prices for which the lands were sold by Sherman county were regulated according to the quality of the land. But this is clearly the effect of the contract, and the exception addressed to plaintiffs' petition on the ground that the contract was uncertain in its terms was properly overruled.

There was no merit in the exception to the petition presenting the contention that there was no allegation that the damages claimed were occasioned by the alleged breach of the contract, as the petition clearly shows the contrary.

[11] We are of opinion, further, that the description of the land was sufficiently definite to support the suit for specific performance.

[12] We are further of the opinion that, under the general allegation of damages for breach of the contract, which were alleged to be $70,000, evidence was admissible to show the market value of the land for the purpose of recovering the difference between the contract price and such market value, especially as no special exception has been presented to that allegation. City of San Antonio v. Pizzini, 58 S. W. 635; Id., 95 Tex. 1, 61 S. W. 1102; I & G. N. Ry. Co. v. Glover, 84 S. W. 604; St. L. S. W. Ry. Co. v. Jenkins, 89 S. W. 1106. There was no error in permitting Geo. W. Erwin, Jr., to give his opinion of the market value of the land as we think he showed himself qualified to express such opinion.

[13] The abstract of title was admissible to show title in the defendants, and hence their ability to perform.

[14] In view of another trial, we would suggest further that, if Lile is not bound by the contract upon which the suit is based, then the plaintiffs' petition presents a cause of action for specific performance against Naylor to the extent of his undivided one-half interest in the land and for damages sustained by plaintiffs for his failure to secure specific performance of the contract to convey Lile's one-half interest. Fry on Specific Performance, § 1222; 36 Cyc. 740; Cochran v. Blout, 161 U. S. 350, 16 Sup. Ct. 454, 40 L. Ed. 729; 26 Am. Eng. Encyc. 83; Pomeroy, Specific Performance, §§ 173, 435, 438, 439, 469.

[15] In the seventeenth paragraph of the court's charge, the jury were instructed to allow damages, the measure of which would be the difference between the market value of the land and the contract price in the event they found that defendant had breached the contract, if the jury should further find that the contract should not be specifically performed, but that the same was a valid contract. The same evidence which would support a recovery for such damages would also support a specific enforcement of the contract, at least in so far as Naylor's interest in the land was concerned, and some guide should have been contained in the charge to control the jury in determining whether the one relief or the other should be allowed. The jury should be further instructed that, in the absence of fraud on the part of the plaintiff in procuring the contract from Naylor, the same was a valid and binding contract upon Naylor at all events, and upon Lile also if he authorized its execution or ratified the same thereafter.

[16] In his petition plaintiff sought to recover special damages for the breach of the contract. The claim for special damages was based upon allegations that after the execution of the contract in question he had an opportunity to sell the land at a price of $7.50 per acre, or $2.50 per acre in excess of his contract price. He alleged that on February 22, 1909, he entered into a contract with one J. N. Bolard to sell to the latter a one-fourth interest in said land with an option to Bolard to purchase an additional one-fourth interest therein at the price of $7.50 per acre; that Bolard paid to him the sum of $1,250 as a guaranty of his good faith; that on March 22, 1909, plaintiff notified both these defendants of his contract with Bolard, and that he would lose the opportunity to consummate this trade with Bolard if defendants did not execute the contract sued on herein; that on April 25, 1909, Bolard offered to buy a one-half interest in the land at the price of $7.50 per acre; that on divers and sundry occasions thereafter plaintiff notified defendants of this offer of Bolard; and that, by reason of the defendants' failure to consummate said contract, plaintiff lost the opportunity to sell to Bolard a one-half interest in the land at $7.50 per acre. The expected profits from the sale which plaintiff contemplated making to Bolard were alleged as special damages, and in his petition plaintiff sought to recover the same. It will be observed that this alleged contract with Bolard was on the 22d day of February, while the contract made the basis of this suit was dated February 17th. The petition contains this further allegation: "Plaintiffs further say that at or before the making of said contract of February 17, 1909, the said Parker had notified defendants, and especially defendant Naylor, that he was negotiating and expected to make a resale of said lands at a profit, and defendants had full knowledge and notice of all the said facts at and before the making of said contract of February 17, 1909." Appellants presented a special exception to that part of the petition seeking to recover these special damages, which exception was overruled. The majority of this court are of the opinion that there was no error in this ruling. They are of the opinion that, as alleged, the special damages were

the natural and probable result of the breach of the contract and fairly within the contemplation of the parties and therefore recoverable; especially in view of the fact that the defendants had notice of plaintiff's opportunity to make a sale to Bolard in time to have avoided the loss by plaintiff of that bargain, and, according to the allegations of the petition, willfully breached the contract thereafter. They are unable to see any sufficient reason for distinguishing this case from the decision of our Supreme Court in Bourland v. C., O. & G. Ry. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, wherein it was held that special damages were recoverable by a shipper when no notice of the same was given to the railway company before or at the time the shipping contract was made, but notice of such special damages was given before they accrued and before the shipment was delivered.

The writer, however, is unable to agree with this conclusion. He believes that the only measure of damages for the breach of the contract would be the difference between the contract price and the market value of the land, as this measure, and no other could have been within the contemplation of the parties at the time the contract was executed, even though Naylor knew that Parker was purchasing the property for the purpose of selling the same again as a speculation. He bases his dissent upon the decision of our Supreme Court in the case of M., K. & T. Ry. Co. v. Belcher, 89 Tex. 428, 35 S. W. 6, in which a recovery of special damages accruing after the shipment, and of which the railway company had no notice at the time of the contract, was denied. In the Bourland Case the correctness of the decision in the Belcher Case is not questioned, but the distinction is based upon the fact that in the Bourland Case the contract to carry had been fully performed and the special damages occurred through the negligence of the railway company in refusing to deliver the shipment after it had reached its destination, and after the railway company had received notice of such special damages. The peculiar facts of that case were held to be a sufficient excuse for a departure from the general rule announced in the Belcher Case; but in the present case the writer does not believe that there were any peculiar facts or circumstances which would require a different rule from that applied in the Belcher Case. Many assignments are presented to the admission of testimony to prove the special damages referred to above; the objections to the testimony in the main presenting the same contention made in the special exception to the petition alleging such damages. The majority of this court are of the opinion that these assignments should be overruled for the reasons already stated; but the writer is of the opinion that the assignments should be sustained for the same reasons expressed in his dissent stated above.

[17] Numerous assignments are presented to the admission of declarations on the part of Naylor, both in correspondence and parol statements, to the effect that he had authority from Lile to sign the latter's name to the contract. Some of these declarations were made prior to the execution of the contract and during negotiations between Naylor and Parker relative to the sale in question, and some were made after the contract was executed. The majority of the court are of the opinion that these assignments should be overruled, inasmuch as the declarations objected to were made during the negotiations between Naylor and Lile as part thereof, and inasmuch as there was other evidence tending to establish the alleged fact that Naylor in the sale under consideration was in fact authorized to represent Lile as his agent. In their judgment the declarations constitute a part of the res gestæ of the accompanying relevant acts and at all events admissible as against Naylor and proper for the consideration of the jury as against Lile in event of the jury's determination of the issue of agency vel non in plaintiffs' favor. They therefore think there was no error in admitting the declarations referred to, particularly in view of the court's instruction on that subject in the fifteenth paragraph of his charge, which presented the matter as favorably to appellant Lile as he has the right to claim. On this subject the majority cite the following cases: Nicklasse v. Griffith, 59 Ark. 641, 26 S. W. 381; Winch v. Baldwin, 68 Iowa, 764, 28 N. W. 62; Wintrode v. Fluke, 41 Kan. 388, 21 Pac. 249; Bacon v. Johnson, 56 Mich. 182, 22 N. W. 276; Latham v. Pledger, 11 Tex. 439, 440.

The writer is unable to agree with the conclusion of the majority last stated and is of the opinion that all evidence of declarations by Naylor referred to should have been excluded. The contract upon which plaintiffs' suit was based was attached to plaintiffs' petition and made a part thereof, and in the petition plaintiffs alleged that it was executed by Naylor both for himself and as the agent of Lile. The legal effect of the contract was to warrant Naylor's authority to bind Lile thereby. Naylor filed no verified answer denying the execution of the contract and filed no other pleading which would serve as a basis for a denial by him that he did wararnt to Parker that he had authority from Lile to bind the latter by the contract. The failure of Naylor to file such a pleading was equivalent to an admission by him that he did warrant to Parker that he was the duly authorized agent of Lile to

execute the contract in Lile's name, and upon the trial it was not necessary for plaintiffs to prove the declarations complained of in order to show that Naylor had represented himself to be the legally constituted agent of Lile to execute the contract. The authority of Naylor to bind Lile by the contract in question was denied by Lile in his testimony, and Lile's testimony upon that issue was supported in part by that of Naylor.

The rule is well established that agency cannot be proven by evidence of declarations made by the alleged agent. Coleman v. Colgate, 69 Tex. 88, 6 S. W. 553; Noel v. Denman, 76 Tex. 306, 13 S. W. 318; Mills v. Berla, 23 S. W. 310; Higley v. Dennis, 40 Tex. Civ. App. 133, 88 S. W. 400; Dyer v. Winston, 33 Tex. Civ. App. 412, 77 S. W. 227; Aultman & Taylor Mfg. Co. v. Cappleman, 36 Tex. Civ. App. 523, 81 S. W. 1243; Mechem on Agency, § 100. The writer recognizes, of course, that under ordinary circumstances a party may introduce testimony to prove some allegation material to his cause of action or defense where the same is competent for that purpose, even though the evidence would be otherwise objectionable upon some issue presented by his adversary; the only recourse left to the adversary in that event being an instruction from the court limiting the purpose for which the testimony may be considered. But he is unable to perceive how the declarations of Naylor could serve any necessary purpose to plaintiffs, and they were certainly of a nature tending strongly to prejudice Lile. Where the reason for the rule which would permit the plaintiffs to offer proof of those declarations ceases, then the rule should no longer apply. Nor does the writer believe that it can be said that the harmful effects of that testimony to Lile were removed by the court's instruction that Naylor's agency to bind Lile by the contract could not be established by proof of declarations made by Naylor. In McAuley v. Long & Co., 61 Tex. 74, our Supreme Court expressed very grave doubt whether evidence was ever in fact withdrawn from the consideration of the jury. In the case of G., C. & S. F. Ry. v. Levy, 59 Tex. 542, 46 Am. Rep. 269, the judgment was reversed because of error in admitting illegal evidence, although that evidence was subsequently withdrawn by the court. Also in the case of Smyth v. Caswell, 67 Tex. 576, 4 S. W. 848, our Supreme Court condemned the practice of admitting improper testimony and then excluding it, intimating that such an error would be cause for a reversal unless it be apparent from the record that the error was harmless.

For the reason indicated, the judgment is reversed, and the cause remanded.

DUNKLIN, J., dissenting in part.